**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**KIRK A. ERDMANN,**

        **Plaintiff,**                  **CIVIL ACTION NO. 15-10816**

        **v.**                                 **DISTRICT JUDGE DENISE PAGE HOOD**

**COMMISSIONER OF**            **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Kirk Erdmann seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to Social Security benefits for his mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 27) and Defendant's Motion for Summary Judgment (docket no. 28). Plaintiff and Defendant each filed a Reply. (Docket nos. 30, 31.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 5.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.     RECOMMENDATION**

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 27) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 28) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on September 12, 2012, alleging that he has been disabled since March 1, 2012, due to his mental impairments. (TR 26, 131-44.) The Social Security Administration denied Plaintiff's claims on October 19, 2012, and Plaintiff requested a *de novo* hearing. (TR 26, 77, 108-09.) On September 9, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Melvyn Kalt. (TR 39-67.) Plaintiff's sister, Laura Erdmann, also testified. (TR 58-63.) In a September 27, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 34.) The Appeals Council declined to review the ALJ's decision (TR 13-18), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court. (Docket nos. 27, 28.) Plaintiff responded to Defendant's Motion (docket no. 30), and Defendant responded to Plaintiff's Motion (docket no. 31.)

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 27 at 3-9) and Defendant (docket no. 28 at 3-11) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. The ALJ also discusses Plaintiff's medical record and hearing testimony throughout his decision. (TR 29-33.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned incorporates the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

**IV.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2012; and that Plaintiff suffered from the following severe impairments: schizoaffective disorder; attention-deficit/hyperactivity disorder (ADHD); and a history of non-material alcohol abuse. (TR 28.) Next, the ALJ found that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 29-30.) The ALJ then found that Plaintiff's allegations regarding the extent of his symptoms were not "entirely credible" and that Plaintiff had the Residual Functional Capacity (RFC) to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the work must be unskilled in nature and deal primarily with objects instead of people." (TR 30.)

Subsequently, the ALJ determined that Plaintiff's limitations "have little or no effect on the occupational base of unskilled work," and that Plaintiff was therefore capable of performing a significant number of jobs in the national economy. (TR 34.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from March 1, 2012, through the date of the decision. (*Id.*)

**V.  LAW AND ANALYSIS**

  **A.  Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of*

3

*Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). The court can only "reverse the [ALJ's] decision and award benefits . . . if all essential factual issues have

been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176.

Plaintiff seeks under sentence four on the grounds that (1) "Plaintiff's RFC is not supported by substantial evidence," (2) "the ALJ erred in evaluating Plaintiff's credibility," and (3) "the ALJ failed to obtain [Vocational Expert] testimony at Step Five." (Docket no. 27 at 10, 19, 23.) Because the first issue is related to the third issue, the undersigned will address them together, first, and will address Plaintiff's credibility arguments last.

### 1. *The ALJ's Determination of Plaintiff's RFC/Step 5 Analysis*

As stated above, the Commissioner has the burden of proof on the fifth step of the sequential analysis, "proving that there is work available in the economy that the claimant can perform." *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). The Commissioner can meet her burden on the fifth step of her analysis by referring to the "Grid," 20 C.F.R. Pt. 404 Subpt. P, App. 2, which dictates a finding of "disabled" or "not disabled" based on the claimant's exertional restrictions, age, education, and prior work experience. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). But if a claimant has nonexertional limitations, such as a mental impairment, the Commissioner is not always permitted to rely on the Grid alone to determine whether a disability exists. *See id.* at 1173-74; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e). If a claimant's non-exertional limitations prevent the claimant from doing the full range of work at the designated level, then the Commissioner must come forward with some reliable evidence showing that there remains a significant number of jobs that the claimant

6

can perform, taking into account the claimant's exertional and non-exertional limitations. *See Shelman v. Heckler*, 821 F.2d 316, 321-22 (6th Cir. 1987). But, "it is *only* when 'the nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level that nonexertional limitations must be taken into account and a nonguidelines determination must be made.'" *Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981)). Therefore, a plaintiff "must show an impairment that significantly impairs [his] ability to do a full range of work at a designated level." *Id.*

Even if a nonexertional limitation is found to be severe, the limitation does not preclude use of the Grid "where the severe nonexertional limitation does not significantly erode the occupational base of work." *Boley v. Astrue*, No. 11-10896, 2012 WL 680393, at *9 (E.D. Mich. Feb. 10, 2012 (citing *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990)). "In order to conclude the nonexertional impairment does not significantly erode the occupational base, the ALJ must support his or her finding with 'reliable evidence of some kind.'" *Id.* (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

In his RFC analysis, the ALJ stated:

> [Plaintiff's] ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. As indicated in Finding 4 above, the undersigned finds [Plaintiff] has no more than moderate difficulty in the "paragraph B" areas, which results in limiting him to unskilled work that deals primarily with objects instead of people. Such limitation only minimally erodes the large base of unskilled jobs available at all exertional levels.

(TR 34.) As the undersigned interprets his brief, Plaintiff argues that in formulating Plaintiff's RFC, the ALJ does not account for the moderate difficulties that the ALJ found Plaintiff has in

7

social functioning, and that the ALJ erred in relying solely on the Grid and not eliciting testimony from a vocational expert.[1] Defendant argues that the ALJ accommodates Plaintiff's moderate limitations in social function by limiting Plaintiff to unskilled jobs that deal "primarily with objects, rather than with data or people," and furthermore, that, pursuant to SSR 85-15, unskilled jobs are, by their nature, limited in the same way, such that Plaintiff's limitations would not erode the occupational base of unskilled jobs.

> According to the Commissioner's Policy Program Statement (SSR) 85-15:
>
> The basic mental demands of competitive, remunerative, unskilled work **include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting**. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.
>
> . . . .
>
> Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. **These jobs ordinarily involve dealing primarily with objects, rather than data or people**, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.

SSR 85-15 (emphasis added). Based on the language of this policy statement, it is clear that the ALJ's limitation of unskilled work that "deals primarily with objects instead of people," would not significantly erode the occupational base of unskilled jobs. Therefore, the primary issue regarding the ALJ's formulation of Plaintiff's RFC is whether a limitation to unskilled work with objects instead of people is sufficient to account for the ALJ's finding that Plaintiff has "no more

---

[1] Plaintiff also alleges a number of errors with the factual basis underlying the ALJ's RFC, which are addressed below.

than moderate difficulties" in social functioning. (TR 29, 34.) If it is, then the ALJ's reliance on the Grid instead of vocational expert testimony was permissible.

Plaintiff is correct that courts in this district have held that "moderate limitations in social functioning do, in fact, contrary to the Commissioner's contention, affect the occupational base." *Warren v. Comm'r of Soc. Sec.*, No. 13-15230, 2015 WL 1245936, at * 15 (E.D. Mich. Mar. 18, 2015) (citing cases from other districts); *see also Mulroy v. Comm'r of Soc. Sec.*, No. 16-10474, 2016 WL 7668441 (E.D. Mich. Dec. 8, 2016) *R. & R. adopted*, 2017 WL 76889 (Jan. 9, 2017). The court in *Warren* noted that "[a]lthough unskilled work deals primary with 'things (rather than data or people),' someone performing unskilled work must be able to respond appropriately to supervision and coworkers on a sustained basis. *A substantial loss of this ability to deal with supervisors and coworkers 'severely limit[s] the potential occupational base*." *Warren*, 2015 WL 1245936, at *15 (citations omitted) (emphasis added).

In *Warren*, therefore, the Court ultimately relied on its conclusion that the claimant's moderate limitations in social functioning caused a "substantial loss" of ability "to deal with supervisors and coworkers." *Id.* As stated above, the issue here is essentially the same: whether Plaintiff is capable of unskilled work (including by maintaining an ability to deal with supervisors and coworkers) despite his moderate limitations in social functioning. The undersigned finds there is substantial support for the ALJ's conclusion that Plaintiff is capable of unskilled work, including the ability to deal with supervisors and coworkers, particularly unskilled work that deals primarily with objects instead of people.

Perhaps one of the most significant points the ALJ discusses is the fact that Plaintiff is currently employed in a *semi-skilled to skilled* job as a video camera operator, albeit in a part-time capacity. (TR 33.) The ALJ found that this work "requir[es] greater mental functioning

9

than is required of unskilled work." (*Id.*) Plaintiff testified that he receives instructions "telling [him] what to do" while at work, and that he interacts with his co-workers, including by asking them to cover for him if he needs a break. (TR 55, 56-57.) In his Step 2 analysis (which the ALJ specifically references in the RFC analysis, *see* TR 34), the ALJ also notes that Plaintiff "has a friend in his neighborhood who gives him a ride to work," "has a good relationship with his sister and is able to shop in stores," "hangs out with friends," and "attends group therapy sessions." (TR 29.) Finally, the ALJ notes that the Social Security Field Office Interviewer observed that Plaintiff was "well groomed, calm, cooperative, and pleasant." (TR 31.) Plaintiff generally does not dispute these findings, although he points out that in the Function Report he filled out, Plaintiff stated that when he shops, sometimes, "I forgot what I'm there for, panic, put things away and walk out." (TR 192.)

The ALJ further found that Plaintiff has "no more than mild difficulties" regarding concentration, persistence or pace, noting that Plaintiff "displayed no deficiencies in these areas at the hearing," and that Plaintiff "is able to pay bills (with reminders), count change, and write music." (TR 29.) The ALJ also noted that Plaintiff is "able to use public transportation," emphasizing that such ability is also "relevant to social functioning." (*Id.*) Plaintiff argues that there is other evidence in the record suggesting that Plaintiff has "moderate" difficulties in concentration, persistence or pace,[2] in particular the findings of the "state agency doctor," Dr. Michele Leno, PhD. (Docket no. 27 at 18.) However, Dr. Leno only found that Plaintiff was "moderately limited" in his ability to "carry out *detailed* instructions" and "maintain attention and concentration for *extended* periods." (TR 75 (emphasis added).) She found that Plaintiff was "not significantly limited" in a number of ways relating to concentration, persistence or

---

[2] Plaintiff does not, however, explain how such allegedly "moderate" difficulties are not accommodated by the ALJ's limitation to unskilled work with objects instead of people.

10

pace, including the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms," the "ability to carry out very short and simple instructions," and the "ability to perform activities within a schedule, maintain regular attendance, and be punctual."  (*Id.*)  She also found that Plaintiff was not "not significantly limited" in his "ability to ask simple questions or request assistance," his ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and his ability to "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness."  (TR 75-76.)  And, the ALJ specifically noted that the "Field Office interviewer observed no difficulty with concentration, coherency, or with understanding."  (TR 29, 199.)

Plaintiff takes issue with a number of the ALJ's other findings related to the RFC, without explaining how these alleged errors affected the ALJ's determination that Plaintiff has the ability to do unskilled work that does not involve people or the ALJ's analysis regarding Plaintiff's limitations in social functioning and concentration, persistence and pace.  For example, Plaintiff argues that the ALJ ignores changes to Plaintiff's medication, but Plaintiff does not explain why that alleged error translates into an inability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15 (describing unskilled work).  Nevertheless, the undersigned will briefly address these arguments as the undersigned interprets them from Plaintiff's brief.

Plaintiff argues that the ALJ erred in finding that "[m]edication reviews dated January 2012 and March 2012 both contain . . . unremarkable/benign findings."  (Docket no. 27 at 11 (citing TR 32).)  Plaintiff points out that the medication review notes indicate that Plaintiff was "decompensating to a degree" in March 2012, and that his treating psychiatrist, Dr. Antonio

11

Nucum, D.O., planned to increase the dosage of one of Plaintiff's medications. (TR 260.) However, consistent with the ALJ's findings, these notes also state that there was "no evidence of poor grooming and hygiene" at either visit, and that Plaintiff had "good" insight and "good" judgment. (TR 257, 263.) The March 2012 note states that Plaintiff "had been doing well but lately seeing some symptoms returning." (TR 256.)

Plaintiff points out that his treatment records show that he had an increase of hallucinations by September 2012. (TR 254.) The ALJ acknowledges this fact, however, and seems to discount it, based on the fact that Plaintiff had a previous Social Security disability application denied in May 2012 (after the "benign" March 2012 appointment). (TR 32.) In spite of the reported increase in hallucinations in September 2012, the ALJ points out that Plaintiff still presented to Dr. Nucum with "normal speech; good eye contact; cooperative manner; appropriate affect; logical thought processes; and no evidence of poor grooming." (TR 32, 251-52.) Plaintiff argues that the ALJ "ignored" a Group Progress Note from November 2012. (Docket no. 27 at 13.) It is true that the ALJ did not specifically discuss this particular note; however, the ALJ does discuss notes from October 2012, emphasizing that Plaintiff reported he was "doing better overall," and notes from December 2012, which, the ALJ found "reveals an entirely normal mental status exam, good grooming, a lack of anxiety, no hallucinations, and no suspiciousness." (TR 32.) The ALJ's discussion of Plaintiff's 2012 medical treatment records is thorough, notwithstanding the ALJ's failure to specifically address the November 2012 treatment records, and each of the ALJ's findings are supported by notes in the actual records. Contrary to Plaintiff's argument, the undersigned finds that the ALJ gave the medical evidence a "full and fair review." (Docket no. 27 at 14.)

As for Plaintiff's 2013 records, the ALJ mentions that "the most recent medication review reveals a decent mental status exam and no evidence of poor grooming . . . . depression was noted to be only moderate and anxiety merely mild." (TR 32.) Plaintiff cites a number of pages of his 2013 medical records, pointing out that they reflect that Plaintiff "relates sleep still not good" and that he "has been more depressed in mood, at times not wanting to get out of bed," which the ALJ did not specifically discuss. (TR 374.) Plaintiff also points to the fact that his March 2013 medical records contain a note reflecting that he has "no money" and only two days left of medication; however, the same note also reflects that Plaintiff's therapist spoke to Plaintiff's sister, and Plaintiff's sister intimated that Plaintiff's family "will assist with payment." (TR 367.) The record also reflects that the therapist and Plaintiff's sister "discussed medication assistance programs." (*Id.*) Again, the ALJ does not provide a fulsome discussion of Plaintiff's 2013 medical records; however, it is apparent to the undersigned that he reviewed the records and considered them in making his decision, which is sufficient. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) ("[I]t is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'").

Plaintiff also argues that, when formulating Plaintiff's RFC, the ALJ erred by declining to adopt the specific functional limitations described by Dr. Leno, the only medical opinion evidence in the record regarding functional limitation. However, it is clear that in determining Plaintiff's functional limitations, the ALJ relied heavily on Dr. Leno's opinion, and, as Defendant points out, the ALJ's determination is consistent with Dr. Leno's opinion. Indeed, the only limitation which does not appear to be included in the ALJ's formulation of the RFC is Dr.

13

Leno's finding that Plaintiff "may be best suited for work activity of a solitary nature." (TR 76.) Moreover, as Defendant points out, the Sixth Circuit has held that an ALJ is not required to, "as a matter of law, seek out a physician's medical opinion where one is not offered." *Brown v. Comm'r of Soc. Sec.*, 602 Fed. App'x 328, 331 (6th Cir. 2015). Here, the ALJ clearly considered and largely adopted Dr. Leno's opinion regarding Plaintiff's functional limitations, and did not err in declining to "specifically adopt" Dr. Leno's "specific 'paragraph B' findings." (TR 33.)

In sum, the undersigned finds that the ALJ's formulation of Plaintiff's RFC—unskilled work that "deals primarily with objects instead of people"—sufficiently accounts for Plaintiff's limitations, and is supported by substantial evidence, although the undersigned acknowledges that Plaintiff also cited evidence which supports his own assertions. Moreover, the ALJ did not err in relying on the Grid. Plaintiff's arguments regarding the ALJ's formulation of Plaintiff's RFC fail; Plaintiff's Motion should be denied in this regard.

### 2. *The ALJ's Assessment of Plaintiff's Credibility*

Plaintiff also argues that the ALJ erred by not sufficiently explaining his credibility determination, and that the ALJ's credibility determination is not supported by substantial evidence.

An ALJ's credibility determination is to be afforded great weight. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). A finding that a claimant is not credible, or is only partially credible, however, must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the

14

> individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

SSR 96–7p.[3] Further, to the extent that the ALJ found that Plaintiff's symptoms are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying the factors). Nevertheless, "[i]t is well established that the ALJ is not required to discuss every factor or

---

[3] SSR 96-7p was superseded by SSR 16-3p. SSR 16-3p eliminates use of the term "credibility," from regulatory policy, to "clarify that subjective symptom evaluation is not an examination of an individual's character," and to "more closely follow . . . regulatory language regarding symptom evaluation." SSR 16-3p, *available at* 2016 WL 1119029, at *1 (March 16, 2016). SSR 16-3p took effect on March 16, 2016, more than two years after ALJ Kalt issued his decision in this matter, and therefore it does not apply here. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:15-cv-126, 2016 WL 2901746, at *8 n.6 (E.D. Tenn. May 18, 2016) (citations omitted) (concluding SSR 16-3p should not be retroactively applied).

conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases).

The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were "not entirely credible." (TR 31.) At various points in his opinion, the ALJ points out that Plaintiff lives alone, has no history of inpatient treatment, that Plaintiff was working at a semi-skilled/skilled job at the time of the hearing, and that Plaintiff had a number of "decent" or "normal" findings at his mental health medication reviews. (TR 30-31.) The ALJ also specifically noted that, despite Plaintiff's statements that he sometimes does not bathe, dress, or sleep for days (TR 190), the "record consistently reveals the claimant maintains adequate hygiene, which tends to contradict his testimony." (TR 32.) Regarding his activities of daily living, the ALJ discussed how Plaintiff "has a pet cat that he feeds and grooms . . . prepares simple meals daily; performs household chores; shops for groceries; and writes music." (TR 29.) Finally, the ALJ emphasized that in Plaintiff's "Appeal Report," Plaintiff "indicated he had no new impairment and no worsening of his previously alleged impairments" and that "his alleged impairments had 'no effect' on his ability to care for his personal needs." (TR 31.)

Plaintiff argues that the ALJ "fails to identify what allegations are inconsistent with what objective evidence." (Docket no. 27 at 20.) However, it is clear from the ALJ's decision that he found Plaintiff's allegation that Plaintiff sometimes did not bathe, dress or sleep for days to be inconsistent with the mental health records showing that his mental health care providers found him to have adequate hygiene. Plaintiff also alleged that, while he has struggled with mental health issues his entire life (including during periods of time when he was engaged in full-time work), his symptoms have recently increased and he is now experiencing them "all at once." (TR 31, 48.) The ALJ clearly found that allegation inconsistent with the treatment notes

16

following Plaintiff's "most recent medication review," in April 2013, which shows that Plaintiff's hallucinations are "much less frequent now," that his depression was "moderate," and that his anxiety is "mild." (TR 32, 322-26.)

Plaintiff also identifies some of facts/opinions which he alleges the ALJ failed to consider in evaluating Plaintiff's credibility, including the fact that Plaintiff's medications "continued to be adjusted," the fact that Plaintiff's activities of daily living are actually quite limited, and the fact that Plaintiff's current work is "*intermittent*/part-time," and therefore not indicative of an ability to perform work on a sustained, full-time basis. Plaintiff also argues that the ALJ improperly rejected Plaintiff's sister's testimony without giving an explanation. These arguments fail.

As discussed above, the ALJ thoroughly reviewed Plaintiff's medical record, noting how Plaintiff's subjective complaints and diagnoses changed over time, particularly after Plaintiff's initial disability application was denied in May 2012. (TR 32.) The fact that the ALJ did not explicitly acknowledge that Plaintiff's medication changed over time is not fatal to the ALJ's credibility analysis. And, even if Plaintiff's activities of daily living and his part-time job, without more, do not evidence Plaintiff's ability to sustain full-time work, they are clearly relevant in weighing Plaintiff's credibility. Moreover, the ALJ specifically acknowledges that Plaintiff's work is "part-time/intermittent," and is based on whether there is an event at the Palace of Auburn Hills. The ALJ noted that "as the type of the work [Plaintiff] engages in does not require full-time attendance, one can only speculate as to how much the claimant would work if required." (TR 31.)

Finally, Plaintiff complains that the ALJ improperly failed to credit Plaintiff's sister's testimony regarding the extent of Plaintiff's symptoms and limitations, which testimony,

17

Plaintiff claims, would have bolstered Plaintiff's credibility. (Docket nos. 27 at 22; 30 at 7.) Regarding Plaintiff's sister's testimony, the ALJ stated, "[w]hile the undersigned does not feel [Plaintiff's] sister necessarily lacked credibility, her testimony provided little insight into the severity or frequency of the claimant's alleged mental impairments. Moreover, the testimony provided little indication of a work-preclusive mental impairment." (TR 33.) The ALJ only assigned "some weight" to her third party report, noting that she is not medically trained and is not a disinterested third party. (TR 33; 180-88.) The ALJ also found that her statements in the third party report "do not evidence greater limitations tha[n] those already indicated." (TR 33.)

The undersigned notes that Plaintiff's sister did disclaim any knowledge regarding "how [Plaintiff] functions at work." (TR 61.) As for Plaintiff's personal life, the ALJ acknowledged her testimony that Plaintiff is "forgetful, mostly sad, and irritable." (TR 31.) She further testified that she "runs errands" with him, and reminds him to shower and to have food in his refrigerator. She explained that:

> [H]e's always have periods of, like, serious depression where he would not get out of bed, or, like, . . . he used to claim he had migraines when he was too scared to leave his house, because he was embarrassed to admit that he was too scared to leave his house. But, yeah, probably about the past two or three years, it's really kind of been—like, I think he would be able to white-knuckle it for a lot of years; but now, it just seems that the older he gets, he's less able to do that.

(TR 63.) The undersigned finds the ALJ did not err in only assigning some weight to Plaintiff's sister's testimony and third party report. As Defendant points out, it was not inappropriate for the ALJ to consider the close relationship between Plaintiff and his sister. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"). Moreover, it is clear that at least part of the ALJ's reasoning for partially discrediting Plaintiff's testimony—the fact that his allegations were not

18

fully supported by the objective medical evidence—applies to the ALJ's analysis of Plaintiff's sister's testimony and third party report.

The ALJ provided specific reasons for discounting Plaintiff's credibility in his decision, applying the factors set forth in 20 C.F.R. § 416.929(c)(3). Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight. It is not the court's job to resolve questions of credibility. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

## VI. CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 27) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 28) be **GRANTED**.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 23, 2017            s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: February 23, 2017            s/ Lisa C. Bartlett
                                    Case Manager